UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSHUA E.,<br><br>               Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | CASE NO. C23-5492-BAT<br><br>**ORDER REVERSING AND REMANDING FOR AWARD OF BENEFITS** |

Plaintiff appeals the ALJ's denial of his applications for Supplemental Security Income and Disability Insurance Benefits. He contends the ALJ misevaluated his testimony, the lay witness testimony, and the medical opinion evidence. Dkt. 10 at 1. For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for an immediate calculation of an award of benefits under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently thirty-eight years-old, has a limited education, and has worked as a restaurant manager and night auditor. Tr. 580, 594-95. On November 27, 2019, Plaintiff applied for benefits, alleging disability as of November 1, 2019. Tr. 270-78. His application was denied initially and on reconsideration. Tr. 69-88, 91-118. On March 11, 2021, the ALJ conducted a hearing, at which Plaintiff, a vocational expert ("VE"), and medical expert ("ME"), neurologist,

Dr. James Haynes, testified. Tr. 34-67. On March 31, 2021, the ALJ issued a decision finding Plaintiff not disabled. Tr. 15-26. The Appeals Council denied Plaintiff's request for review, and, in August 2021, Plaintiff appealed the ALJ's decision to this Court, and the case, 21-5618-DWC, was assigned to the Honorable David W. Christel. Tr. 1-6, 633-34, 696-99.

In March 2022, Judge Christel reversed and remanded, finding the ALJ harmfully erred in evaluating medical opinions from Drs. Robert Hander and Norman Staley. Tr. 643-44. Judge Christel noted the ALJ failed to recognize Drs. Hander and Staley opined Plaintiff would be capable of performing light work only after undergoing surgery to correct a Chiari I malformation.[1] Tr. 643. Judge Christel acknowledged Dr. Haynes testified Plaintiff was capable of light work without surgery. Tr. 643. However, Judge Christel found the ALJ erred in failing to make an explicit finding that resolved the discrepancy between Drs. Hander's and Staley's opinions that surgery was necessary and Dr. Haynes' testimony that surgery was unnecessary.

---

[1] A "Chiari malformation" is "a condition in which brain tissue extends into the spinal canal. It occurs when part of the skull is misshapen or smaller than is typical[,] and [t]he skull presses on the brain and forces it downward." Chiari Malformation, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010 (last visited Jan. 9, 2024). Chiari malformations are considered

> structural defects in the base of the skull and cerebellum, the part of the brain that controls balance. Normally the cerebellum and parts of the brain stem sit above an opening in the skull that allows the spinal cord to pass through it (called the foramen magnum). When part of the cerebellum extends below the foramen magnum and into the upper spinal canal, it is called a Chiari malformation.

Chiari Malformation, National Institute of Neurological Disorders & Stroke, Fact Sheet, Nat'l Inst. of Neurological Disorders & Stroke, https://www.ninds.nih.gov/health-information/disorders/chiari-malformations?search-term=chiari (last visited Jan. 9, 2024). "The most common surgery for Chiari malformation is called posterior fossa decompression," and the "[s]urgery involves removing a small section of bone in the back of the skull. This relieves pressure by giving the brain more room. During surgery, the covering of the brain called the dura mater may be opened." *Id.*

ORDER REVERSING AND REMANDING FOR AWARD OF
BENEFITS - 2

1       Judge Christel additionally found the ALJ failed to provide sufficient reasons for
2  discounting Plaintiff's testimony based on inconsistencies with the medical record and
3  improvement with treatment.  Tr. 645-47.  For the same reasons, Judge Christel found the ALJ
4  erred in evaluating the lay witness testimony.  Tr. 647.
5       On February 7, 2023, the same ALJ held a second hearing on remand.  Tr. 590-606.  The
6  ALJ acknowledged that following his prior March 2021 hearing, Plaintiff underwent surgery to
7  correct the Chiari malformation on March 18, 2021.  Tr. 591-92 (discussing Tr. 816).  After
8  recovering from the March 2021 surgery, Plaintiff returned to full-time work on June 29, 2021.
9  Tr. 591-92 (discussing Tr. 816).  Accordingly, the ALJ acknowledged that, given his return to
10 work, Plaintiff had amended his application to request benefits for a closed period only:  from
11 November 1, 2019 through June 28, 2021.  Tr. 816, 866.  On March 9, 2023, the ALJ again
12 found Plaintiff not disabled for the closed period, and Plaintiff filed the instant appeal.

**DISCUSSION**

A.    **Plaintiff's and Lay Witness Testimony**

       In addition to testifying at the March 11, 2021, and February 7, 2023 hearings, Plaintiff attested to the functional limitations and symptoms caused by his headaches in a December 2019 Headache Questionnaire and in a May 2020 Function Report.  Tr. 355-62 (function report); Tr. 319-21 (headache questionnaire).

       Plaintiff explained he began experiencing headaches in his youth as a result of straining, coughing, sneezing, and/or lifting heavy objects.  Tr. 319.  He explained the headaches were caused by a Chiari brain malformation whereby his "cerebellar tonsils [were] herniated and

ORDER REVERSING AND REMANDING FOR AWARD OF
BENEFITS - 3

pressing on [his] brain stem."[2]  Tr. 355.  Plaintiff testified in 2021, before his surgery, that the last time he had been able to work full-time was in November 2019 as a manager of a fast-food restaurant.  Tr. 45; see also Tr. 322 (Plaintiff's work history report).  He explained he suffered from headaches every day of varying severity, and they were often so intense he would require a break or would need to leave the jobsite completely.  Tr. 57.  Plaintiff testified the headaches were often triggered by "literally daily activity stuff," like "coughing, sneezing, . . . bending over."  Tr. 58.  He testified he "tried [his] hardest" to continue with the job, but his employer advised him to "get [his health] situation dealt with and come back when [he could] be [there] every day."  Tr. 54.

     Plaintiff testified he continued to suffer from the same symptoms and remained unable to work during the closed period in large part because, from day to day, it was unpredictable whether he would be able to complete a full day of work.  Tr. 55, 597.  He explained he tried not to do anything that would trigger his headaches – including coughing, laughing, straining, bending over, or picking up items.  Tr. 50-51.  However, that was not always possible, and a trip to the bathroom could cause a severe headache in spite of the fact Plaintiff took stool softeners to prevent bowel movements from interrupting his day.  Tr. 55-56.

     Plaintiff testified in March 2021 that, with his upcoming surgery, he would essentially be "asking [his] doctor to cut [his] brain open for a 50/50 chance of fixing [his malformation] because he literally can't do it anymore."  Tr. 57.  Plaintiff's Chiari surgery, however, was

---

[2] The Chiari 1 malformation was first diagnosed in December 2019 following an MRI.  Tr. 428-32 (On December 6, 2019, Physician's assistant ("PA") Caoilin Hoctor notes that she "reviewed [Plaintiff's] MRI results with him and explained the nature of the Chiari Malformation which is very likely . . . causing the majority of his symptoms including his posterior headaches worse with straining"); Tr. 458-59 (Neurosurgeon, Dr. Marc Goldman, notes Plaintiff's "pain and dizziness" caused by the Chiari malformation and recommends surgery).

ORDER REVERSING AND REMANDING FOR AWARD OF
BENEFITS - 4

delayed in 2020-2021 due to the Covid pandemic and could not occur until March 18, 2021, following the first hearing.[3]  Tr. 596-97.

On remand in February 2023, Plaintiff testified his March 18, 2021 surgery was successful, and he experienced near immediate relief.  Tr. 601-02.   Following surgery, Plaintiff initially returned to full-time work as the manager of the same fast-food restaurant, but he was subsequently employed full-time as the manager of a pet store.  Tr. 601-02.

In his 2023 decision, the ALJ found at step two Plaintiff's Chiari malformation "status post-surgical repair in March 2021" and his headaches constituted severe impairments.[4]  Tr. 571. The ALJ subsequently found Plaintiff presented objective medical evidence establishing generally that his medically determinable impairments could cause some of the symptoms alleged, and no affirmative evidence of malingering.  Tr. 574.  The ALJ was therefore required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *accord Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (confirming that the "clear and convincing" standard continues to apply).

In 2023, the ALJ rejected Plaintiff's headache testimony for several reasons that were

---

[3] Accordingly, the ALJ did not account for Plaintiff's surgery in his March 31, 2021 decision. Tr. 15-26.

[4] Previously, in his March 2021 decision, the ALJ similarly found that Plaintiff's Chiari malformation and headaches were severe impairments.  Tr. 18.  As noted, at that time, Plaintiff's Chiari malformation had not been surgically repaired.  While the ALJ in 2023 stated that the severe impairment was "post-surgical repair in March 2021," the Court notes that the relevant closed time period appropriately concerned Plaintiff's Chiari malformation and headaches both pre-and post-surgery (pre-surgery from November 1, 2019, through March 18, 2021, and post-surgical recovery from March 28, 2021, through June 28, 2021).  The ALJ also found several severe mental impairments, but Plaintiff has not challenged on appeal any of the ALJ's findings regarding his mental impairments.

ORDER REVERSING AND REMANDING FOR AWARD OF
BENEFITS - 5

identical to the ones he provided for rejecting Plaintiff's testimony in 2021, and which had already been rejected as inadequate by Judge Christel. *See* Tr. 574-77; *cf.* Tr. 21-23; *see also* Tr. 645-47. Specifically, those identical reasons include: (1) the absence of Plaintiff's complaints regarding headaches in certain medical records, including an October 2019 visit with Dr. McVey, a February 2020 visit with Plaintiff's primary care physician, Dr. Sidhu, and a June 2020 consultation with psychologist, Dr. Alvord, Tr. 575-76 (citing Dr. McVey's records at Tr. 420-27, Dr. Sidhu's records at Tr. 469-73, and Dr. Alvord's records at Tr. 511-14); (2) Plaintiff's "generally normal neurological exams with minimal neurological deficits," Tr. 577; and (3) evidence that Plaintiff's headache symptoms improved and/or were stable prior to his surgery with the use of medications and/or cannabis, Tr. 576 (citing absence of medical visits from June through November 2020 as evidence that Plaintiff's "symptoms were alleviated with medication/cannabis"), Tr. 577 (asserting that Plaintiff's treatment until surgery was "routine with headache medication").

      The law of the case doctrine applies to the adequacy of the above three findings given there is no additional evidence or reason to justify a change to the Court's prior analysis of the adequacy of these reasons. *See Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (unless "the evidence on remand is substantially different," the law of the case doctrine precludes revisiting prior rulings). The Court notes the Commissioner suggests, in 2023, the ALJ altered his finding regarding Plaintiff's alleged improvement with medication to "additionally note[] that after Plaintiff's reports to his providers of symptom improvements, [Plaintiff] did not complain of ongoing disabling headaches or seek any medication adjustment, suggesting that his symptoms were alleviated with prescribed medication and cannabis." Dkt. 17 at 5 (citing Tr. 576). Presumably, the Commissioner references the ALJ's statement that following Plaintiff's June

2020 psychological evaluation with Dr. Alvord, "there is then no evidence of complaints of ongoing disabling headaches for some months" until a subsequent November 2020 visit with neurosurgeon, Dr. Ellenbogen.  Tr. 576 (citing Tr. 511-12, 555).  The ALJ's 2023 express acknowledgement regarding the absence of appointments from June through November 2020 does not, however, sufficiently alter the ALJ's prior 2021 related findings to preclude application of the law of the case in light of the ALJ's previous similar recitation of Plaintiff's chronological medical records.  *See* Tr. 21-22.

Nevertheless, even if this Court were to conclude that the law of the case doctrine does not apply under the circumstances, the ALJ's reason remains inadequate.  Plaintiff has acknowledged he reported that medication and cannabis aided the intensity – but not the frequency – of his headaches.  Dkt. 10 at 12.  However, as Plaintiff persuasively notes, if medication and cannabis had indeed "stabilized" his headaches, he would not have undergone and endured a subsequent brain surgery.  Dkt. 10 at 12.  Plaintiff's medications and cannabis simply helped him survive the long wait during the pandemic for the opportunity to have Chiari surgery.

In 2023, the ALJ also offered two additional reasons for rejecting Plaintiff's testimony: (1) the absence of any mention in Plaintiff's medical records that his providers directly witnessed Plaintiff "experiencing his daily headaches" or personally observed him "in pain or distress," Tr. 575-77 (citing Plaintiff's January 2020 visit to surgeon, Dr. Goldman at Tr. 458-62, Plaintiff's April 2020 visit with Dr. McVey at Tr. 483-92); and (2) evidence that Plaintiff filed for unemployment benefits in 2020 and 2021.  Tr. 576-77.  Neither supports the ALJ's determination to reject Plaintiff's testimony.

First, in pointing to the absence of a specific notation or observation in Plaintiff's medical

records, the ALJ essentially attempts to manufacture a conflict between Plaintiff's pain and symptom testimony and his medical records where none, in fact, exists. Here, there is no dispute the objective medical evidence, including multiple MRIs, established Plaintiff suffered from a Chiari 1 malformation and that Plaintiff underwent surgery to correct the malformation. Nor is there any dispute Plaintiff's neurosurgeons acknowledged Plaintiff suffered from "significant pain and symptomology" as a result of the malformation and recommended the surgery. *See* Tr. 535-55. The case cited by the Commissioner, therefore, is distinguishable given that, here, the ALJ has failed to point to any actually conflicting evidence. *See Smartt*, 53 F.4th at 498–99.

Second, Plaintiff's receipt of pandemic or unemployment benefits during 2020 and 2021 likewise did not constitute a clear and convincing reason for rejecting Plaintiff's testimony regarding the symptoms and functional limitations associated with his headaches; nor was the finding supported by substantial evidence. In his 2023 decision, the ALJ stated Plaintiff filed for unemployment benefits during the relevant period in 2020 and 2021, asserting that in doing so, Plaintiff would have had to "declare he was willing, able, and seeking employment opportunities." Tr. 576. This, according to the ALJ, "seem[ed] inconsistent with the [Plaintiff's] allegation of an inability to work due to disability." Tr. 576.

Plaintiff, however, contests he held himself out as willing and able to work, and notes that he only received such benefits during the pandemic, at which time "pandemic, unemployment benefits were awarded without the requirement that individuals look for work." Dkt. 10 at 12-13. Additionally, Plaintiff generally contends the receipt of unemployment benefits does not automatically undermine his testimony that he was unable to work during that period of time.

The receipt of unemployment benefits undermines a claimant's testimony only where

ORDER REVERSING AND REMANDING FOR AWARD OF
BENEFITS - 8

there is evidence of record that establishes the claimant held himself out as available for full-time work. *Erick T. v. Comm'r of Soc. Sec.*, No. C19-232-BAT, 2019 WL 3001391, at *2 (W.D. Wash. July 10, 2019) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).  Here, the record does not contain any documentation supporting the ALJ's finding, and the ALJ failed to cite to any record evidence in support of his statement that Plaintiff held himself out as willing and able to work full-time in 2020 and 2021.  Tr. 576; *see also see Schwarz v. Kijakazi*, No. 22-35792, 2023 WL 8271968, at *1 (9th Cir. Nov. 30, 2023) (stating that in Washington, it may be possible to be both eligible for unemployment benefits and disabled under Social Security disability criteria).  Moreover, given the uncertainty regarding the type of benefits that Plaintiff in fact received during the pandemic, substantial evidence does not support the ALJ's finding. [5]

For the above reasons, the ALJ again failed to offer specific, clear, and convincing reasons for rejecting Plaintiff's testimony.  Additionally, the ALJ's rejection of Plaintiff's mother's third-party function report for the same reasons that he rejected Plaintiff's testimony, similarly constituted harmful error.  Tr. 579 (rejecting mother's testimony); Tr. 363-70 (third party function report).

The Court rejects the Commissioner's argument the ALJ was no longer required to

---

[5] The Court acknowledges the Commissioner's argument that Plaintiff failed to provide any evidence in support of his assertion that he received pandemic benefits as opposed to non-pandemic unemployment benefits.  However, it was the ALJ who failed to provide record support for his finding otherwise.  *See* Tr. 576-77.  Moreover, in reply, Plaintiff cited to the State of Washington's website for the Employment Security Department, which itself provided information concerning pandemic emergency unemployment benefits and confirmed that such benefits were in effect until their expiration September 4, 2021 – after the end of the relevant closed period in this case.  *See* Dkt. 18 at 3 & n.1 (citing Covid 19 Information, Employment Security Department, https://esd.wa.gov/newsroom/covid-19 (last visited Jan. 9, 2024)).

ORDER REVERSING AND REMANDING FOR AWARD OF
BENEFITS - 9

articulate his consideration of the third-party function report.  *See* Dkt. 17 at 5-6.  An ALJ is required to determine RFC based upon all relevant evidence of record; this includes observations made by a claimant's family, neighbors, friends, or other person.  *See* 20 C.F.R §§ 404.1454(a)(1), 404.1545(a)(3).  That an ALJ can disregard or reject relevant lay witness evidence for no reason is inconsistent with the Commissioner's obligation to consider such evidence, and the rule the ALJ must provide some rationale in order for the Court to meaningfully determine whether the ALJ's conclusions are free of legal error and supported by substantial evidence.  *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

The Court notes Plaintiff has requested it to credit his testimony and the lay witness testimony and award benefits.  However, prior to doing so, the Court must address additional arguments raised by the parties concerning the medical opinions in this case, which it does below.

**B.  Medical Opinion Evidence**

**1.  Background**

In conjunction with both the 2021 and 2023 decisions, the ALJ considered three medical opinions regarding Plaintiff's Chiari malformation and related headaches:  two opinions from non-examining state agency physicians, Drs. Hander and Staley, dated February and July 2020, respectively, and the March 11, 2021 testifying opinion from consulting, non-examining ME, Dr. Haynes.  Tr. 69-88 (Dr. Hander's opinion); Tr. 91-118 (Dr. Staley's opinion); Tr. 36-44 (Dr. Haynes' testimony).

Both Drs. Hander and Staley noted Plaintiff's Chiari malformation and his plans to have surgery.  Tr. 76 (Dr. Hander asserts in February 2020 that Plaintiff "plans to have surgery within a few months"); Tr. 96 (Dr. Staley's related recognition).  Accordingly, both Drs. Hander and

Staley projected their RFC opinions out until October 2020, at such time when they (erroneously) believed that Plaintiff's surgery would have occurred. Tr. 74, 76, 84, 86; *see also* Tr. 96, 110 (Dr. Staley notes in July 2020 that Plaintiff's surgery had been delayed due to the pandemic). They opined that after Plaintiff's surgery, he would be capable of light work. Tr. 76, 86, 99, 113.

ME Dr. Haynes subsequently testified in March 2021, that Plaintiff suffered from a Chiari malformation, which ME Dr. Haynes testified was approximately a three on a scale of one to five regarding severity. Tr. 37. Dr. Haynes acknowledged the malformation was "clinically significant," causing both neurological changes and headaches. Tr. 37-38. At the time Dr. Haynes testified in March 2021, he recognized Plaintiff was "headed for surgery," but that Plaintiff was not "at the end of the movie yet." Tr. 38. Dr. Haynes stated surgery was "not a slam-dunk favorable cure," but opined "the outlook i[s] favorable." Tr. 38. As a result, Dr. Haynes asserted it was "too early to talk about disability." Tr. 38. However, Dr. Haynes subsequently contradicted himself and then opined he did not believe Plaintiff's headaches at the time of the March 2021 hearing were indeed disabling. Tr. 42. Dr. Haynes noted Plaintiff suffered from headaches that "c[a]me on with a cough," and that "anything, grunting or straining or heavy lifting would alter [or] is capable of altering [Plaintiff's] intercranial pressure" and cause "downward pressure on this malformation," which was "something to be avoided." Tr. 39-42. Dr. Haynes then opined Plaintiff was capable of a light work level with no more than ten pounds of lifting and only occasional frequency "for most of [the] postural limitations." Tr. 40, 43.

In his March 2021 decision, the ALJ found "persuasive" the opinions of all three non-examining physicians – Drs. Hander, Staley, and Haynes. Tr. 23-24. As noted, on appeal, Judge

Christel found the ALJ harmfully erred when he failed to resolve the discrepancy between the three opinions regarding whether surgery was first required before Plaintiff was capable of light work.  Tr. 643-44 (noting that "without a finding that resolves this discrepancy [regarding whether Plaintiff would be capable of light work without surgery], there is no way for this Court to review whether the ALJ's assessment of the medical opinions was reasonable").  In so ruling, Judge Christel rejected the Commissioner's characterization of Drs. Hander's and Staley's opinions as simple "prognoses" as opposed to medical opinions that the ALJ was required to evaluate.  Tr. 643-44.  Judge Christel, however, additionally rejected Plaintiff's arguments that Dr. Haynes' opinion that his headaches were not disabling prior to surgery constituted an impermissible conclusion on the question of disability reserved to the Commissioner, and that further record development was required because Dr. Haynes failed to offer an adequate opinion regarding Plaintiff's RFC pre-surgery.  Tr. 641-42.

Contrary to his 2021 decision, in 2023, the ALJ changed his evaluation of Drs. Staley's and Hander's opinions, finding they were in fact "not persuasive" and "of little value" because Drs. Hander and Staley did not provide opinions of Plaintiff's "functioning prior to October 2020" – especially given that Plaintiff was subsequently unable to have surgery until March 2021.  Tr. 579.  By contrast, the ALJ found Dr. Haynes' opinion that Plaintiff's pre-surgery headaches were not disabling was persuasive for two of the same reasons discussed above that the ALJ offered in rejecting Plaintiff's testimony.  Tr. 578 (asserting that Dr. Haynes' opinion was consistent with "the objective medical evidence that shows no acute findings on neurological exam and no reports of [Plaintiff] appearing in distress,". . . and "with the evidence that prescription medication helped alleviate [Plaintiff's] headache symptoms").

    **2.**    **Current Arguments**

While Plaintiff states in his assignment of errors he is challenging the ALJ's evaluation of the medical opinion evidence, his challenge is raised in a non-traditional sense.  *See* Dkt. 10 at 1, 13-16.  Plaintiff assumes he is precluded by law of the case doctrine from challenging the ALJ's 2023 determination that Dr. Haynes' opinion was persuasive regarding his pre-surgery RFC.  *See* Dkt. 10 at 16 (stating that he "does not challenge [Dr. Haynes'] finding [that Plaintiff's symptoms 'rose to a level of disability' or 'inability to function'] . . . since the Court [Judge Christel] previously affirmed a similar finding").  As a result, Plaintiff argues simply the medical opinion evidence "does not undermine a finding of disability."  Dkt. 10 at 13.

In so arguing, Plaintiff first suggests the SSA's administrative decisions to deny his claims, based on the opinions of Drs. Hander and Staley, demonstrate he is entitled to an award of benefits in this case.  Dkt. 10 at 14.  In support, Plaintiff points to the SSA's February 2020 and August 2020 notices disapproving his claim, on initial review and reconsideration, respectively.  *See* Tr. 119, 133.  Those notices recognized:

> We realize that you are presently unable to work, but your condition is not expected to prevent you from working for twelve consecutive months.  By 10/31/20, the evidence indicates you will have the capacity to perform work where you do not have to do much lifting. Therefore, the claim is denied.

Tr. 119, 133.

Plaintiff asserts the SSA's administrative decisions to deny his claims, as reflected by the above notices, were based on Drs. Hander's and Staley's erroneous belief that he would be able to have the surgery and recover by October 2020 – within twelve months of his onset date.  Dkt. 10 at 14.  However, due to pandemic delay, Plaintiff's surgery was postponed until March 2021, and, as a result, Plaintiff argues that he is entitled to benefits because he satisfied the twelve-month duration required by the SSA.

The Commissioner, however, accurately notes the ALJ found Drs. Hander's and Staley's

ORDER REVERSING AND REMANDING FOR AWARD OF
BENEFITS - 13

opinions unpersuasive "precisely" because of the physicians' inability to render an RFC opinion regarding Plaintiff's function prior to the surgery. Dkt. 17 at 8. The Commissioner therefore argues the Court cannot simply ignore the ALJ's 2023 findings regarding Drs. Hander's and Staley's opinions and award benefits based solely on the 2020 SSA notices and Drs. Hander's and Staley's opinions. The Court agrees.

Plaintiff additionally argues Dr. Haynes' opinion did not in fact contradict his testimony. Dkt. 10 at 16. According to Plaintiff, Dr. Haynes' opinion failed to address whether he "could be at work or remain on task while he had a headache." Dkt. 10 at 16. The Court disagrees. As noted, Judge Christel previously found Dr. Hayne's opinion that Plaintiff did not suffer from disabling headaches prior to his surgery constituted a permissible opinion regarding Plaintiff's functionality. *See* Tr. at 640 (rejecting Plaintiff's argument that the opinion "expressed a conclusion on the question of disability reserved to the Commissioner," and instead finding that Dr. Haynes' opinion "regarding the likelihood of [Plaintiff] sustaining full-time competitive employment [prior to surgery] was a permissible assessment under *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012)). Judge Christel additionally found Dr. Haynes offered a sufficient RFC assessment when he opined that Plaintiff was capable of a light work level with no more than ten pounds of lifting. Tr. 641; *see also* Tr. 40, 43. Contrary to Plaintiff's arguments otherwise, Dr. Haynes' opined limitations are, in fact, in conflict with Plaintiff's testimony otherwise.

Nevertheless, the Court finds Dr. Haynes' medical opinion does not preclude a finding of disability or an award of benefits in this case because, in 2023, the ALJ again harmfully erred in evaluating Dr. Haynes' medical opinion. Plaintiff is mistaken regarding application of law of the case doctrine as concerns Dr. Haynes' opinion and Plaintiff's current ability to challenge the ALJ's 2023 evaluation of that opinion. In his 2022 order, Judge Christel expressly required the

ALJ on remand to make additional findings that explained if and why Dr. Haynes' opinion was more persuasive than the opinions of Drs. Hander and Staley, which the ALJ did. *See* Tr. 643 (Judge Christel's order); *see also* Tr. 578-79 (2023 decision); *cf.* Tr. 23-24 (2021 decision). In doing so, the ALJ made new findings regarding all three opinions, as set forth above. The law of the case doctrine is not broad enough to bar a court from reviewing new findings on the merits of an issue that were previously explicitly required by the court in its prior order remanding the case, as occurred here. *See Stacy*, 825 F.3d at 567.

In again finding Dr. Haynes' opinion to be "persuasive," the ALJ offered reasons that were identical to those the ALJ provided in rejecting Plaintiff's testimony. The ALJ asserted that Dr. Haynes' opinion was consistent with overall record because "the objective medical evidence . . . shows no acute findings on neurological exam and no reports of [Plaintiff] appearing in distress." Tr. 578. Additionally, as with Plaintiff's testimony, the ALJ noted "the evidence that prescription medication helped alleviate [Plaintiff's] headache symptoms." Tr. 578.

The ALJ's characterization of Plaintiff's neurological exams as benign was not supported by substantial evidence. As noted, there is no dispute that Plaintiff was diagnosed in late 2019 with a Chiari 1 malformation, that Plaintiff's neurosurgeons acknowledged that Plaintiff suffered from "significant pain and symptomology" as a result of the malformation and recommended the surgery, and that Plaintiff indeed underwent skull/brain surgery. *See* Tr. 535-55. Moreover, for the reasons above, evidence of medication improvement did not demonstrate that Plaintiff's headaches and symptoms were any less severe than alleged. Tr. 646.

Because the ALJ's 2023 evaluation of Dr. Haynes' opinion was not supported by substantial evidence, the Court finds that the opinion does not undermine Plaintiff's testimony or his entitlement to benefits in this case.

ORDER REVERSING AND REMANDING FOR AWARD OF
BENEFITS - 15

**C.     Remedy**

Plaintiff seeks remand for an immediate award of benefits for the closed period from his November 1, 2019, onset date through June 28, 2021, when he was able to return to full-time work following his Chiari 1 surgery. Dkt. 10 at 16-18; Dkt. 18 at 6-8. The Court may remand for an award of benefits where: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Plaintiff argues that remand is appropriate based on his testimony and the VE's corroborating testimony that a person with Plaintiff's limitations would be unable to perform competitive work. Dkt. 10 at 17; *see* Tr. 61-63 (VE's March 2021 testimony); Tr. 603-05 (VE testimony February 7, 2023). In opposition, the Commissioner mistakenly assumes that Plaintiff's argument for remand for an award of benefits is narrowly based on the medical opinion evidence – and, specifically, upon the opinions of the state agency physicians, Drs. Hander and Staley, along with the administrative notices regarding the denial of Plaintiff's claims on initial review. Dkt. 17 at 7-8. As such, other than to argue on the merits that the ALJ appropriately rejected Plaintiff's testimony, the Commissioner fails to address Plaintiff's argument that he is entitled to remand for an award of benefits based on his improperly rejected testimony. Dkt. 17 at 2-5, 7-8.

The Court finds that all of the conditions are satisfied and that remand for an award of benefits based on Plaintiff's testimony is appropriate. This case involves a closed period, from November 2019 to June 2021, which ended several years ago. The record regarding Plaintiff's

testimony for the time period at issue is fully developed, and the Commissioner has addressed it on multiple occasions already such that further administrative proceedings would serve no useful purpose. The ALJ has twice failed to provide legally sufficient reasons supported by substantial evidence to reject Plaintiff's testimony.  If Plaintiff's testimony were credited as true, the ALJ would be required to find him disabled during the closed time period.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED,** and this case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for calculation of an award of benefits for the closed period from November 1, 2019, through June 28, 2021.

DATED this 9th day of January, 2024.

BRIAN A. TSUCHIDA
United States Magistrate Judge